IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MONIQUE N. ROBINSON, *Plaintiff*, v. AMERICAN READING COMPANY, *Defendant*. | Civil Action No. 24-5608 |

### MEMORANDUM OPINION

**Goldberg, J.**                                                                                           **April 29, 2025**

Defendant, the American Reading Company ("ARC") moves to dismiss this employment discrimination action in its entirety for failure to state claims upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) and/or for a more definite statement under Federal Rule of Civil Procedure 12(e). Because the complaint in its present form fails to allege sufficient facts to state viable claims under federal and Pennsylvania state law for disparate treatment, hostile work environment, and violation of privacy, the motion shall be granted without prejudice, and with leave to replead those claims if Plaintiff can do so in good faith with additional facts. The motion shall be denied with respect to Plaintiff's claim for retaliation, and her common law IIED claim will be dismissed with prejudice.

### I.     FACTUAL ALLEGATIONS

The following facts are set forth in Plaintiff's complaint and therefore accepted as true.[1]

---

[1] In deciding a motion under Federal Rule of Civil Procedure 12, the court must accept all factual allegations in the complaint as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading, the plaintiff may be entitled to relief. Atiyeh v. Nat'l Fire Ins. Co. of Hartford, 742 F. Supp. 2d 591, 596 (E.D. Pa. 2010).

1

Pro Se Plaintiff Monique Robinson brought this action against ARC, her former employer, alleging it discriminated against her on the basis of her race and/or sex and disclosed her private medical records to a third party. The complaint potentially raises the following claims: disparate treatment, hostile work environment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, and the Pennsylvania Human Relations Act, 43 P.S. § 951, *et. seq.* (PHRA), a privacy claim under the Americans with Disabilities Act (ADA), and intentional infliction of emotional distress (IIED) under Pennsylvania law. Plaintiff's complaint fails to include distinct counts or causes of action. Cognizant of Plaintiff's *pro se* status, I have attempted to discern the "core" allegations in the complaint in order to determine whether viable claims have been stated.

Defendant hires and trains reading "coaches" for client schools where the coaches work with faculty and students. Defendant hired Plaintiff in July 2021, and Plaintiff worked as a coach until Defendant terminated her employment on January 5, 2022. (Pl.'s Compl., 8, 13). Plaintiff alleges she was the only African American woman on her team and that Defendant discriminated against her based on her race and/or sex.

On September 1, and again on September 2, 2021, Plaintiff messaged her supervisor because she was feeling ill and had concerns about attending a training session at a client school, Global Leadership Academy (GLA). Plaintiff alleges her supervisor "pretended" to not see her messages, which she characterizes as "an example of the microaggressive, nasty behavior." (Id. at 13). Plaintiff further alleges that "[t]his is one documented example of many instances where management was verbally abusive, and dismissive." (Id.). On September 3, 2021, Plaintiff went to GLA for training, despite her "dangerous" symptoms. (Id. at 12). Plaintiff's supervisor berated and humiliated Plaintiff for coming to GLA while sick and sent her home. Her supervisor

continued to berate Plaintiff the next day via text message, and this "was the source of a great deal of stress," which was "coupled with a crippling illness that sent [her] into a physical and mental breakdown." Her "health further declined and [she] was deeply depressed." (Id. at 13).

Following the events of September 3rd, GLA updated its handbook to include a new policy that required "all ARC coaches" to present a negative COVID test and proof of vaccination before entering the building. (Id.). Plaintiff alleges that ARC and specifically her management were "supportive and cohesive with GLA's new mandate for a negative test prior to each visit." (Id. at 14).

On October 21, 2021, Plaintiff again visited GLA and was required to present a negative COVID test and proof of vaccination to enter the school. Plaintiff alleges that she, "the only newly hired African American woman, was the only staff who had to take a test or share [a] vaccine card with a school." (Id.). Citing the GLA policy, Plaintiff claims she experienced "discriminatory treatment as the only African American woman on the new team, including being forced to work when expressing COVID symptoms, taking COVID Test and sharing health vaccine status/card with customers." (Id. at 9). Plaintiff claims that "[n]o other employees were forced to take COVID test on personal time or otherwise, prior to visiting customers, nor was this policy," and "none of [her] white colleagues were subjected to such policies." (Id. at 9, 13). Plaintiff claims she was also treated differently than her colleagues with respect to last-minute schedule changes, unfair caseload, differences in commuting times, work performance expectations, and suffering "berating" treatment in the form of microaggressions and discriminatory comments. Finally, she alleges Defendant unlawfully disclosed her private medical information without her consent by disclosing to GLA that she had a COVID vaccination card. (Id. at 9, 12, 14).

On December 3, 2021, Plaintiff requested a meeting with Defendant's director of human resources, Laurine Gravies, and on December 9, she and Gravies had a phone call. (Id. at 9). In the call, Plaintiff:

> . . . explained the discriminatory treatment as the only African American woman on the new team, including being forced to work when expressing COVID symptoms, taking COVID Test and sharing health vaccine status/card with customers, as well as comments made on zoom calls and in team meetings. No other employees were forced to take COVID test on personal time or otherwise, prior to visiting customers, nor was this policy. I discussed with her the lack of support and unfair treatment of portfolio case load and berating treatment and comments from the Northeast executive team.

(Id.). The following day, Plaintiff received her first written feedback, which was followed by a meeting on December 17, 2021 with Director Rehr and supervisor Tamika Barrows via Zoom, in which Director Rehr raised "complaint/concerns" surrounding Plaintiff's performance. (Id. at 9. 15). "During this zoom call there were racist remarks made that made [Plaintiff] very uncomfortable and induced an insurmountable amount of stress and anxiety." (Id. at 10). Plaintiff contends that in response to her request to Director Rehr for feedback, he responded that "because he was a white man, he could explain and make information more digestible." (Id. at 15).

Thereafter, on December 20, 2021, Plaintiff spoke with Ms. Gravies and emailed Human Resources and Defendant's CEO about her "disturbing" interaction with Director Rehr and Ms. Barrows. (Id. at 9). Plaintiff's email mentioned "racist comments made during an unprofessional meeting" and requested another meeting following winter break. (Id.). At one of those meetings, "Ms. Graves, the HR director, announced her awareness of the racist, discriminatory instances of the NorthEast region and suggested [Plaintiff] seek employment elsewhere in the company." (Id. at 14). According to Plaintiff, prior to her complaints to Human Resources, she received positive feedback about her job performance, but after the meeting with HR on December 9, she began

4

receiving negative feedback from her supervisors.  (Id. at 10). On January 5, 2022, Plaintiff's employment was terminated.  (Id. at 15.)

## II.    LEGAL STANDARDS

It is well settled that Fed. R. Civ. P. 12(b)(6) places the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted upon the defendant who seeks dismissal.  Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).  In deciding a 12(b)(6) motion, the court must accept all factual allegations in the complaint as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading, the plaintiff may be entitled to relief.  Atiyeh v. Nat'l Fire Ins. Co. of Hartford, 742 F. Supp. 2d 591, 596 (E.D. Pa. 2010).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotations omitted).  "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and "only a complaint that states a plausible claim for relief survives a motion to dismiss."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. A complaint does not show entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.  Id.

The Third Circuit has detailed a three-step process to determine whether a complaint meets the pleadings standard.  Bistrian v. Levi, 696 F.3d 352 (3d Cir. 2012).  First, the court outlines the elements a plaintiff must plead to state a claim for relief.  Id. at 365.  Next, the court must "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth."  Id.  Finally, the court "look[s] for well-pled factual allegations, assume[s] their veracity,

and then 'determine[s] whether they plausibly give rise to an entitlement to relief.'" Id. (quoting Iqbal, 556 U.S. at 679).

A pro se complaint is "held to less stringent standards than formal pleadings drafted by lawyers." U.S. ex rel. Walker v. Fayette Cty., Pa., 599 F.2d 573, 575 (3d Cir. 1979), (citing Haines v. Kerner, 404 U.S. 519, 521 (1972)). Although the court must construe the facts stated in the complaint liberally in favor of the plaintiff, Haines, 404 U.S. at 520, there are limits to its procedural flexibility, and pro se litigants still must allege sufficient facts in their complaints to support a claim. Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013).

Under Rule 12(e), "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). "The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired." Id. "The decision to grant a motion for a more definite statement is committed to the discretion of the district court." Woodard v. FedEx Freight E., Inc., 250 F.R.D. 178, 182 (M.D. Pa. 2008) (internal citation omitted).

### III.   DISCUSSION

#### A. Disparate Treatment under Title VII and the PHRA

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The PHRA

includes similar proscriptions[2] and is therefore interpreted in accord with its federal counterparts, including Title VII and the ADA. Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996).

In the absence of direct evidence of discrimination, a plaintiff can "adequately plead a *prima facie* case of discrimination. To do so, the plaintiff must allege sufficient facts to show: 1) she is a member of a protected class; 2) she was qualified for the position at issue; 3) she suffered an adverse employment action; and 4) circumstances surrounding the adverse employment action which support a plausible inference of illegal discrimination." Feliciano v. Coca-Cola Refreshments USA, Inc., 281 F. Supp. 3d 585, 590 (E.D. Pa. 2017) (citing Mandel v. M & Q Packaging Corp., 706 F.3d 157, 169 (3d Cir. 2013)).[3]

A disparate treatment claim is pled "when an individual alleges that an employer has treated that particular person less favorably than others because of the plaintiff's race, color, religion, sex, or national origin." Watson v. Fort Worth Bank and Tr., 487 U.S. 977, 985–86 (1988). It is thus relevant to allege facts that raise a reasonable expectation that discovery will reveal evidence of comparators (similarly situated employees) who were not members of the same protected class and who were treated more favorably under similar circumstances, or other circumstantial evidence showing a causal nexus between a plaintiff's membership in a protected class and the

---

[2]  See 43 P.S. § 955.

[3] At the pleadings stage, a plaintiff "is not obliged to choose whether she is proceeding under a mixed-motive or pretext theory, nor is she required to establish a *prima facie* case, much less to engage in the sort of burden-shifting rebuttal that *McDonnell Douglas* requires at a later stage in the proceedings." Connelly v. Lane Const. Corp., 809 F.3d 780, 791 (3d. Cir. 2016). Rather, "[i]t suffices for her to plead facts that, construed in her favor, state a claim of discrimination that is 'plausible on its face.'" Id. "Instead of requiring a *prima facie* case, the post-*Twombly* pleading standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element[s]." Id. at 789.

adverse employment action suffered. Greene v. V.I. Water & Power Auth., 557 Fed. App'x 189, 195 (3d Cir. 2014); Drummer v. Hosp. of Univ. of Pa., 455 F. Supp. 3d 160, 168 (E.D. Pa. 2020).

At the pleadings stage, "[t]he complaint is not required to identify any comparators who have received more favorable treatment than the plaintiff." Houle v. Walmart Inc., 447 F. Supp. 3d 261, 280 (E.D. Pa. 2020); see also Grigsby v. Pratt & Whitney Amercon, Inc., No. 07-0785, 2008 WL 471549, at *8 (M.D. Pa. Feb. 19, 2008) ("In an employment discrimination case, a plaintiff is not required to identify specific individuals of a different race who have received more favorable treatment than the plaintiff."). But Plaintiff must plead facts sufficient "'to raise a reasonable expectation that discovery will reveal evidence of' the necessary element[s]." Connelly, 809 F.3d at 789.

"A similarly situated employee does not need to be identically situated, but the comparator must be similar to plaintiff in 'all relevant respects.'" Jenkins v. Ciocca Mgmt., Inc., Civ. No. 23-5115, 2025 WL 62803, at *7 (E.D. Pa. Jan. 9, 2025) (quoting Abdul-Latif v. Cnty. of Lancaster, 990 F. Supp. 2d 517, 525 (E.D. Pa. 2014)). Relevant factors in determining whether an employee is "similarly situated" are "whether the employees dealt with the same supervisor, were subject to the same standards, shared job responsibilities, and the nature of the misconduct." Id. (quoting Abdul-Latif, 990 F. Supp. 2d at 526).)

In some circumstances, an employer may be liable under Title VII for the harassing conduct of third parties if the employer was aware of the conduct and failed to take reasonable remedial action in response. Johnson v. Bally's Atl. City, 147 Fed. App'x 284, 285–86 (3d Cir. 2005) (alleging "racist comments by casino customers" to sufficiently plead a hostile work environment claim).

Defendant argues that Plaintiff fails to allege that similarly situated employees outside of her protected class were subjected to preferential treatment. (Def.'s Mot. to Dismiss, at 5). Here, Plaintiff alleges she is a member of two protected classes based on her race (African American) and sex (female) and she suffered an adverse employment action (termination). By alleging that she received positive feedback on her job performance from supervisors and independently from client schools, one of which hired her after Defendant terminated her employment, Plaintiff has also pled she was qualified for her position.

For the following reasons, Defendant is correct that Plaintiff fails to allege she was treated less favorably than similarly situated members outside her protected classes.

First, Plaintiff claims that she was the only person subjected to the policy requiring presentment of proof of COVID vaccination and negative testing. That policy, however, was implemented by GLA—not Defendant. Moreover, even if GLA's policy could be imputed to Defendant, Plaintiff fails to allege that any employee, much less one who was similarly situated and fell outside her protected classes, went to GLA and was allowed to enter without providing COVID tests and/or vaccination status. Indeed, Plaintiff alleges that GLA's updated policy applied to "all ARC coaches." Even reading the complaint liberally, the allegations thus do not plausibly suggest that other, similarly situated employees received preferential treatment with respect to this policy.

Second, Plaintiff alleges multiple general instances of disparate treatment in which she claims she was treated differently from her coworkers for purposes of schedule changes, commuting, and in the course of general communications. But nowhere is a specific instance alleged where a similarly situated colleague—i.e., one who dealt with the same supervisor, was

subject to the same standards, and/or shared the same job responsibilities outside of Plaintiff's protected classes was treated more favorably under similar circumstances.

While Plaintiff is not required to identify specific comparators at this stage, she must allege some facts that could give rise to a plausible inference of discrimination surrounding the adverse employment action. Plaintiff fails to allege any facts that raise a reasonable expectation that discovery will reveal evidence of comparators or other circumstantial evidence showing a causal nexus between a plaintiff's membership in a protected class and the termination.

In failing to plead such facts, Plaintiff has failed to state a claim for disparate treatment and this claim must be dismissed. The motion is therefore granted with respect to Plaintiff's claims for disparate treatment under Title VII and the PHRA, but because a district court must permit a curative amendment unless it is plain that such amendment would be inequitable or futile, these claims are dismissed without prejudice. See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 245 (3d Cir. 2008); Long v. Wilson, 393 F.3d 390, 400 (3d. Cir. 2004).

### B. Hostile Work Environment under Title VII and the PHRA

To succeed on a claim for hostile work environment, a plaintiff must establish: (1) she suffered intentional discrimination because of her protected trait; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (4) the discrimination would detrimentally affect a reasonable person in like circumstances; and (5) *respondeat superior* liability. Mandel, 706 F.3d at 167 (applying the elements to sex discrimination); see also Castleberry v. STI Grp., 863 F.3d 259, 263 (3d Cir. 2017) (applying the elements to race discrimination). The discriminatory conduct must be so extreme as to amount to a change in the terms and conditions of employment. Unless they are extremely severe, offhand comments and isolated incidents are insufficient to sustain a hostile work environment claim." Woodard v. PHB

Die Casting, 255 Fed. App'x 608, 609 (3d Cir. 2007); Shaw v. Temple Univ., 357 F. Supp. 3d 461, 475 (E.D. Pa. 2019). "[A plaintiff] cannot sustain a claim simply by asserting an event and then asserting that it was motivated by racial bias." Davis v. City of Newark, 285 Fed. App'x 899, 903 (3d Cir. 2008). "[I]solated, sporadic incidents of racially or sexually charged comments do not constitute 'severe or pervasive' conduct that is actionable under Title VII." McCloud v. United Parcel Serv., Inc., 543 F. Supp. 2d 391, 399 (E.D. Pa. 2008); cf. Castleberry, 863 F.3d at 265 (finding conduct sufficiently severe where plaintiffs' supervisor used the n-word and, "[w]ithin the same breath," threatened termination).

Here, Defendant contends the Complaint fails to plead a claim for hostile work environment because without more, termination is inadequate to establish the severe or pervasive discrimination element of a hostile work environment claim. (Def.'s Mot. to Dismiss, at 5). Reviewing the facts in the light most favorable to Plaintiff, I agree that Plaintiff has failed to plausibly state a hostile work environment claim. At worst, the complaint alleges only non-specific instances of "racist comments" and "microaggressions," which do not rise to the level of "severe or pervasive" conduct necessary to stating a hostile work environment claim. See McCloud, 543 F. Supp. 2d at 399. Her most specific allegation of a racist and sexist comment is that made by her director that he, as "a white man," could "explain and make information more digestible." (Pl.'s Compl., at 15). There are no facts pled to suggest this remark was made other than once and it therefore is, at most, an "isolated, sporadic incident[] of [a] racially or sexually charged comment." As such, that comment is not actionable under Title VII. See McCloud, 543 F. Supp. 2d at 399.

Likewise, Plaintiff claims that Defendant is generally racist, which loosely manifested in unfair or unequal treatment at work when her supervisor ignored her messages and rescheduled her school visits without notice. Because a plaintiff fails to state a claim when she simply "assert[s]

11

an event and then assert[s] that it was motivated by racial bias," Defendant's motion to dismiss with respect to Plaintiff's hostile work environment claim shall also be granted and this claim dismissed without prejudice. See Davis, 285 Fed. App'x at 903.

### C. Retaliation under Title VII and the PHRA

To state a retaliation claim, a plaintiff must plead "sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence of the following elements: (1) she engaged in conduct protected by the statute; (2) the employer took adverse action against her; and (3) a causal link exists between her protected conduct and the employer's adverse action." Connelly, 809 F.3d at 789 (citing Charlton v. Paramus Bd. of Educ., 25 F.3d 194, 201 (3d Cir. 1994)). Formal and informal employee complaints of discrimination constitute protected activities, and termination is a clear adverse employment action. Abramson v. William Paterson Coll. of N.J., 260 F.3d 265, 288 (3d Cir. 2001). A plaintiff may establish causation by showing (1) that the adverse action took place soon after the plaintiff engaged in the protected activity, or (2) other facts which give rise to an inference that the employer acted with retaliatory intent when taking the adverse action. See LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 232–33 (3d Cir. 2007).

Defendant argues that Plaintiff "fails to plead facts plausibly demonstrating activity protected by Title VII, or a causal connection between Plaintiff's alleged 'protected activity' and her termination." (Mot. to Dismiss, at 6.) According to Defendant, while Plaintiff complained to Human Resources, she describes those complaints as merely an "expression of 'concerns' with a 'lack of support from management.'" (Id.)

I find these allegations suffice to plead a retaliation. By complaining to Human Resources about discrimination on two separate occasions and requesting another meeting in the "new year"

to discuss racial issues, Plaintiff engaged in protected activity. See Abramson, 260 F.3d at 288. In alleging she was terminated, Plaintiff pled an adverse employment action. And, by alleging that Defendant terminated her on January 5, 2022, the inference could arise that Defendant acted with retaliatory intent given the positive feedback Plaintiff received about her work performance prior to her engagement in protected activity and her receipt of negative feedback following her complaints to Human Resources. Accordingly, Defendant's motion to dismiss the claim for retaliation is denied.

### D. Intentional Infliction of Emotional Distress (IIED)

Plaintiff also endeavors to recover damages for the emotional distress she claims she suffered from Defendant's intentional conduct.

Under Pennsylvania law, "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." Hoy v. Angelone, 720 A.2d 745, 753 (Pa. 1998) (citing Restatement (Second) of Torts § 46(1) (1965)). To state an IIED claim, a plaintiff must allege: "(1) the defendant's conduct was intentional or reckless; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused emotional distress; and (4) the resultant emotional distress was severe." E.N. v. Susquehanna Tp. School Dist., Civ. No. 09-1727, 2010 WL 4853700, at *19 (M.D. Pa. Nov. 23, 2010) (citing Taylor v. Albert Einstein Med. Ctr., 754 A.2d 650, 652 (Pa. 2000)). To recover under this theory, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Banyas v. Lower Bucks Hosp., 437 A.2d 1236 (Pa. Super. Ct. 1981) (quoting Restatement (Second) of Torts, § 46 (comment d)). It is "extremely rare" in the employment

13

context for conduct to rise to the level of outrageousness necessary to support recovery for IIED. Mascarini v. Quality Emp. Servs. & Training, Civ. No. 10–1546, 2011 WL 332425, at *9–10 (M.D. Pa. Jan. 31, 2011) (citing Cox v. Keystone Carbon Co., 861 F.2d 390, 395 (3d Cir.1988) and Rinehimer v. Luzerne Cnty. Cmty. Coll., 539 A.2d 1298, 1305 (Pa. Super. Ct.1988))). Indeed, "[r]acial discrimination alone does not meet the 'extreme and outrageous conduct' standard necessary to state a claim for intentional infliction of emotional distress." Brown v. American Airlines, Inc., 723 F. Supp. 3d 411, 423–24 (E.D. Pa. 2024). Nor does loss of employment provide a basis for recovery for IIED. Capresecco v. Jenkintown Borough, 261 F. Supp. 2d 319, 323 (E.D. Pa. 2003).

Here, Plaintiff alleges multiple instances of racist comments, microaggressions, and "nasty" behavior from her supervisor, director, and "Executive Team." As has been consistently held, racial comments and/or racial discrimination do not constitute extreme or outrageous conduct for purpose of IIED under Pennsylvania law. Brown, 723 F. Supp. 3d at 423–24. See also, Jeanjacques v. AMC Ent. Holdings, Inc., No. 21-3670, 2021 WL 4478665, at *5-6 (E.D. Pa. Sept. 30, 2021) (dismissing IIED claim based on allegations of employee making racially charged comments and accusations while having African American customers removed from theater). Thus, in the absence of some further allegations, Defendant's motion to dismiss Plaintiff's IIED claim is granted with prejudice, given that amendment would be futile.

### E. Privacy Claims

Finally, Plaintiff also claims a "health information violation" based on Defendant's disclosure of her COVID vaccination status to GLA. (Pl.'s Compl., at 12, 14, 17.) Liberally construed, this allegation potentially implicates protections afforded under the Americans with

14

Disabilities Act, 42 U.S.C. § 12112 (ADA), the Health Insurance Portability and Accountability Act (HIPAA), or Pennsylvania common law.

Under the ADA, employers "may make inquiries into the ability of an employee to perform job-related functions." 42 U.S.C. § 12112(d)(4)(B). But "employers have to keep confidential all medical information that they obtain when making inquiries about an employee's ability to perform a job." Purvenas-Hayes v. Saltz, Mongeluzzi & Bedensky, P.C., 707 F. Supp. 3d 472, 478 (E.D. Pa. 2023). "When an employer receives information pursuant to [the ADA], it must treat the information as a confidential medical record and can only disclose it to supervisors who need to know about job-related restrictions, first aid and safety personnel, and government investigators evaluating ADA compliance." Id. at 475 (citing 42 U.S.C. §§ 12112(d)(3)(B), (d)(4)(C)).

A plaintiff asserts a violation of the ADA's confidentiality provision by showing: (1) the employer obtained her medical information through an employment-related medical examination or inquiry; (2) the employer disclosed that information; and (3) the employee suffered an injury as a result of the disclosure. Id. (internal citation omitted). To establish injury, a plaintiff "must demonstrate more than a bare violation of the statute." Id. at 477 (citing Tice v. Ctr. Area Transp. Auth., 247 F.3d 506, 519 (3d Cir. 2001)).

Plaintiff fails to plead a claim under the ADA because she fails to state that: (1) Defendant obtained her vaccination status through an employment-related medical examination or inquiry; and (2) she suffered an injury as a result of the disclosure to GLA. Plaintiff alleges only that Defendant told GLA her vaccination status. In the absence of additional facts showing how Defendant acquired Plaintiff's vaccination information and describing how that caused her injury, Plaintiff alleges only a "bare violation of the statute." This is insufficient to state a claim under the ADA and, to the extent Plaintiff intended to assert it, this claim must also be dismissed, albeit

15

without prejudice given that Plaintiff could conceivably allege facts to support such a cause of action.  See Purvenas-Hayes, 707 F. Supp. 3d at 477.

While confidentiality of medical information is protected under some circumstances by the Health Insurance Portability and Accountability Act, 42 U.S.C. § 1920d – d-8, (HIPAA), the statute "does not create a private right of action for alleged disclosures of confidential medical information." Hatfield v. Berube, 714 Fed. App'x 99, 106–07 (3d Cir. 2017) (quoting Wilkerson v. Shinseki, 606 F.3d 1256, 1267 n.4 (10th Cir. 2010)).  Defendant also does not qualify as a "covered entity" and therefore does not fit within the scope of HIPAA's prohibitions on disclosure of medical information.  See 45 C.F.R. § 160.103 (defining a "covered entity" under HIPAA as "a health plan," "a health care clearinghouse," or "a health care provider who transmits any health information in electronic form in connection with a transaction covered by this subchapter").  Thus, in the event that Plaintiff is trying to obtain relief under HIPAA, that claim also fails.  Because amendment would be futile, dismissal is with prejudice.

Finally, Pennsylvania tort law recognizes a claim arising from a "breach of confidentiality," which entails "the unconsented, unprivileged disclosure to a third party of nonpublic information that the defendant has learned within a confidential relationship." Kamal v. J. Crew Grp., Inc., 918 F.3d 102, 114 (3d Cir. 2019) (quoting Alan B. Vickery, Note, Breach of Confidence: An Emerging Tort, 82 Colum. L. Rev. 1426, 1455 (1982)).  But employer-employee relationships are not sufficient "confidential relationships" for purposes of this action, which is instead reserved for relationships like that of the physician-patient or banker-customer.  See Clemens v. ExecuPharm, Inc., No. 20-3383, 2024 WL 199554, at *5 (E.D. Pa. Jan. 18, 2024) (dismissing plaintiff's breach of confidentiality claim under Pennsylvania law when her complaint focused solely on the employer-employee relationship without alleging a confidential relationship).

16

Pennsylvania tort law also recognizes a claim arising from an "invasion of privacy," which includes a cause of action based on "unreasonable publicity given to another's private life." Burger v. Blair Med. Assocs., Inc., 964 A.2d 374, 379 (Pa. 2009). However, to sustain this claim, a plaintiff must show that "the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." Restatement (Second) of Torts § 652D cmt. a (1977); see also Burger, 964 A.2d at 379–80 (holding that disclosure did not constitute publicity because the confidential information was only divulged to the appellee's employer). Here, Plaintiff fails to allege any facts to suggest that her vaccination status was publicized.

Accordingly, Plaintiff has failed to plead any claim under Pennsylvania common law for her employer's alleged disclosure of her medical information. Inasmuch as it also conceivable that Plaintiff could allege facts for publication of private information, she shall be given leave to replead that potential cause of action only.

### IV.    CONCLUSION

As discussed, Plaintiff has failed to allege sufficient facts to state viable discrimination claims under Title VII and the PHRA under the disparate treatment and hostile work environment theories and a viable claim under the ADA and Pennsylvania common law for unlawful disclosure of medical information. These claims are dismissed without prejudice as it is possible that Plaintiff can successfully replead them. The retaliation claim is adequate but could be more clearly stated, and Plaintiff's attention is therefore directed to Fed. R. Civ. P. 8(a), which provides:

> A pleading that states a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

While I see no need to engage in a comprehensive Rule 12(e) analysis in light of my findings under Rule 12(b)(6), in the event that Plaintiff should elect to file an amended pleading, she is directed to likewise amend her retaliation claim to conform with Rule 8(a). Because amendment of her claims for IIED and under HIPAA would be futile, those claims are dismissed with prejudice.

    An Order follows.